IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | D.C. Number: CR F 06-0083 AWI |
| ) | |
| Plaintiff-Appellee, ) | [Mag. No. 6:05-MJ-0028 WMW] |
| ) | |
| v. ) | |
| ) | ORDER ON APPEAL OF |
| CHARLES V. TUCKER, ) | DENIAL OF MOTION FOR |
| ) | ACQUITTAL |
| Defendant-Appellant. ) | |
| ) | |

Charles V. Tucker ("Tucker") appeals his conviction following a bench trial for violations of 36 C.F.R. §§ 2.10(b)(2), 2.10(b)(8), 2.22(a)(3), and 2.61(a). The Magistrate Judge denied Tucker's requests for an acquittal. Tucker now appeals those denials for acquittal. For the reasons that follow, the convictions will be affirmed.

**SCOPE OF REVIEW**

An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of the district court and must first be brought in the district court before prosecution in the court of appeals." United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. § 3402. The district court's review of the magistrate's judgment is governed by the same standards as an appeal from a judgment of a district court to the court of appeals. Fed. R. Crim. P. 58(g)(2)(D); United States v. McFarland, 369 F.Supp.2d 54, 56-57 (D. Me. 2005); United States

v. Fautanu, 751 F.Supp. 1420, 1421 (D. Haw. 1990); United States v. Ramirez, 555 F.Supp. 736, 738-739 (E.D. Cal. 1983). In other words, the district court "is to apply the same scope of review as a United States Circuit Court of Appeals would apply in considering an appeal of a judgment from a United States District Court." United States v. Charrington, 285 F.Supp.2d 1063, 1066 (S.D. Ohio 2003).

## BACKGROUND

Tucker was charged with: (1) residing in the Park without a permit in violation of 36 C.F.R. § 2.61(a) between September 2004 through December 2004; (2) failing to obtain a camping permit on November 12, 2004, in violation of 36 C.F.R. § 2.10(b)(8); (3) failing to turn in found property in violation of 36 C.F.R. § 2.22(a)(3) on November 12, 2004, and; (4) leaving camp equipment after departing a campsite in violation of 36 C.F.R. § 2.10(b)(2) on November 22, 2004. A bench trial occurred on October 5 and 6, 2005, before Magistrate Judge Wunderlich.

During the bench trial, the government presented the following evidence: Tucker had a mailing address of "P.O. Box 1948, Yosemite 95389." T.R.1 at 25.[1] On his signed voter registration form, Tucker indicated under the "Address where you live" section: "care of Chongo,[2] city of Yosemite, state of California, county of Mariposa;" Tucker also voted in the Park. T.R.1 at 122-23. Tucker informed Ranger Visnovske that he had no regular employment and would occasionally earn money when people came up to him in the Park to purchase his self-published books. T.R.1 at 121.

Testimony indicated that Tucker was present in the Park at all times of the day, including early morning and late at night. T.R.1 at 9. Tucker could be found either at the Yosemite Lodge cafeteria or at/near the Camp 4 campground. T.R.1 at 110. If Tucker was absent from one of these locations during the day, one could return an hour later and find him. T.R.1 at 106.

Testimony indicated that, from July 2004 through November 2004, there were only a few occasions when Tucker was absent from the cafeteria in the morning, but on those few occasions,

---

[1] "T.R.1" refers to the transcript of the first day of the bench trial, October 5, 2005.

[2] "Chongo" is the nickname by which Tucker was commonly known in the Park. E.g. T.R.1 at 7.

Tucker would be there at night. T.R.2 at 46.[3] At the cafeteria, Tucker would often sit, along with a large number of packs and bags containing his belonging, with his computer plugged into a nearby outlet at the same table in the southwest corner. T.R.1 at 8, 105, 109-110, 116-17. Ranger Visnovske would observe Tucker's belongings for hours and hours at the table left unattended, but the cafeteria staff would not disturb those belongings because they were friends with Tucker. T.R.1 at 109.

Tucker's belongings were observed at locations other than the cafeteria. On December 5, 2004, Tucker enlisted the help of four or five individuals to help him load his possessions into the back of a pick-up truck. T.R.1 at 125. Ranger Visnovske observed the individuals carry arm-fulls of Tucker's possessions to the truck.[4] See id. The entire bed of the truck was loaded with packs, personal items, a big computer printer, computer keyboards and "a multitude of items that [Ranger Visnovske] had never seen in a visitor's possession in [the Park]." T.R.1 at 127. On the ground next to the truck were several sleeping pads, including an orange pad. T.R.1 at 126.

By November 19, 2004, rangers had gathered information that led them to believe that Tucker had remained overnight in the Park for more than 30 days, which is prohibited. T.R.1 at 34. On September 30, 2005, Tucker's belongings were observed in boulders 1,000 feet from the road and to the northeast of Camp 4 and were subsequently impounded. T.R.1 38-39. Among the items impounded in Fall 2005 were items of mail addressed to Tucker in Yosemite National Park and ranged in dates from 1988 to 2005, including 14 items dated April, June, July, and September 2004. T.R.1 at 42, 79.

Testimony from Rangers Hoeflich and Visnovske indicated that they spoke with Tucker on numerous occasions. When asked where he stayed, Tucker would either not respond or say that he got rides out of the Park with friends. T.R.1 at 9, 26. When asked where he was going to stay the night, Tucker would respond, "Oh, you know, around, I have places to go." T.R.1 at

---

[3] "T.R.2" refers to the transcript of the second day of the bench trial, October 6, 2005.

[4] On September 30, 2005, Tucker's belongings were observed among boulders 1,000 feet from the road and to the northeast of Camp 4. T.R. 38-39.

106. Tucker would never deny that he was staying in the Park, but would never give an exact location of where he was staying. See id. In November 2004, when asked how long he had been in the Park on a permanent basis, Tucker responded, "Oh, I've been here a while." T.R.1 at 121. During the same conversation in November 2004, when asked about where he was spending the night, Tucker blurted out, "I want to leave here just as much as you guys want me to leave. I don't want to stay here for another five or six years." T.R.1 at 122. Further, on November 13, 2004, Tucker told Ranger Hoeflich that Tucker had no Park pass and that he normally did not purchase a Park pass when he entered the Park. T.R.1 at 26-27.

Rangers never saw Tucker on a Yosemite Area Regional Transportation System bus, nor did Tucker ever mention that he was going to leave the Park on a bus. T.R. 119-120, 130. Tucker had no automobile. T.R.1 at 129.

Ranger Hoeflich testified that in 2001, he would see Tucker on a daily or weekly basis during the Spring, Summer, Fall, and sometimes Winter in the Lodge or Camp 4 area, and that his observations of Tucker from 2001 through 2004 were the same as in 2001. T.R.1 at 8-9. Ranger Visnovske also observed Tucker in the Park between 2001 and 2004 at the Lodge Cafeteria and Camp 4 areas. T.R.1 at 105-111. Based on their observations of Tucker, both rangers formed the opinion that Tucker was living in the Park. T.R.1 at 8-9, 105-107. Ranger Visnovske also testified that it was common knowledge that Tucker lived in the Park. T.R.1 at 107. Ranger Visnosvke specifically opined that, based on his observations of Tucker, that Tucker:

> . . . was using [the Park] as his home. Maybe not in the sense that he has a roof and a front door, but he had a place where he could go at any hour of the day any day of the week. He had items - - personal items that belonged to him, a multitude of places where he could sleep . . . as well as places where he could just talk to his friends and quote, work on his books. So he was basically doing his personal business in the Lodge Cafeteria or in Camp 4. Based on the multitude of observations at any hour of the day any day of the week, I am confident that he was living in [the Park.]

T.R.1 at 128-29.

Additionally, on November 6, 2004, Tucker found a red "Greatland" tent. T.R.1 at 18-19. The tent did not belong to Tucker, but he found the tent and converted it to his own use by

storing his property inside the tent. T.R.1 at 18-19, 116. When asked if the red tent was his, Tucker responded, "No, it was here and I just started using it." T.R.1 at 116. Tucker used the tent until November 13, 2004, when the tent was impounded. T.R.1 at 18-19, 113. Tucker had been storing his property in the tent for approximately one week. T.R.1 at 18-19, 113, 116. When asked if he had made any effort or had reported the tent as lost property or if he had made any report at all, Tucker responded, "No, it was just here and I decided to use it." T.R.1 at 116.

Finally, on November 22, 2004, Ranger Hoeflich observed Tucker leave camping equipment at Camp 4 and then physically leave that campsite. T.R.1 at 35. At 9:30 p.m., Tucker left the Lodge Cafeteria, after having remained there all afternoon, with a large backpack and another bag. T.R.1 at 35-36. Tucker rode his bicycle to campsite No. 9 in Camp 4. See id. At campsite No. 9, Tucker accessed the bear box and then exited the campground and walked down the road. See id. Tucker left his bicycle at campsite No. 9, but was not registered to camp in Camp 4. See id. Tucker walked approximately 200 yards and then left the road and disappeared from rangers's observations. See id. Ranger Hoeflich testified that he walked up and down the road, but saw no sign of Tucker. See id. The next day, November 23, 2004, Tucker was again observed by Ranger Visnovske on three separate occasions and Tucker again remained in the Lodge Cafeteria until it closed. T.R.1 at 117. When Tucker departed the cafeteria, he rode his bicycle to Camp 4 and rode around in circles in the Camp 4 parking lot. T.R.1 at 117-118. Tucker then went to the bear box at campsite No. 9 in Camp 4 and retrieved several items, including an orange sleeping pad, from the bear box. T.R.1 at 118. Tucker then exited Camp 4 and was again out of site from rangers. See id. Ranger Visnovske testified that the orange sleeping pad that he had observed Tucker remove from the bear box was the same orange sleeping pad that he had observed next to the pick-up truck on December 4, 2004.

Tucker did not testify, but did call several witnesses on his behalf and cross-examined the government's witnesses. Diana Thomas testified that she orchestrated a climb for a disabled climber and had enlisted Tucker to serve as a technical advisor/aide. T.R.2 at 6-10. Thomas testified that Tucker stayed in her registered campsites from September 28, 2005, to October 2, 2005. See id.

Sam Hayes testified that he lives outside the Park in El Portal and has been employed as bus driver and tour guide in the Park for 18 years for Yosemite Concession. T.R.2 at 58. Hayes testified that he had given approximately 3 to 6 rides to Tucker in his private vehicle both into and out of the Park during 2004. T.R.2 at 59, 63-64.

Dean Potter testified that he was a professional climber, lived in Yosemite West (outside the Park), and had previously lived in Foresta (outside the Park). T.R.2 at 67. In 2004, Potter testified that he gave Tucker rides into and out of the Park dozens and dozens of times. T.R.2 at 69-70. Potter also testified that Tucker would often stay with Potter, including once in Moab, Utah, and that Tucker stayed with Potter dozens and dozens of times (at least more than a month) in 2004. T.R.2 at 69, 71.

Ivayo Ninov testified that he designed climbing gear and frequently visited the Park, essentially on weekends. T.R.2 at 76-77. Ninov testified that he gave Tucker rides into and out of the Park many times in 2004. T.R.2 at 77. Ninov testified that in April 2004, he and Tucker took a three week trip to Joshua Tree National Park. T.R.2 at 78.

David Griffith testified he is also rock climber and that he tries to visit the Park at least twice per year. T.R.2 at 83-84. Griffith testified that he spent approximately one month in the Park in 2004 and gave Tucker approximately a dozen rides into and out of the Park. T.R.2 at 84-85. Griffith testified that he would usually take Tucker to El Portal, where he believed Tucker was staying. T.R.2 at 84-85.

Finally, during cross-examination, Ranger Hoeflich testified that there is no limitation on day use in the Park. T.R.1 at 53. Also, Hoeflich testified that he never found Trucker camped illegally except on November 12, 2004, when Tucker was in a campground and not registered. T.R.1 at 57-58. Ranger Visnovske testified that he did not spend much time surveilling Tucker in 2004. T.R.1 at 141. Additionally, Ranger Davis testified that the rules of departure, i.e. leaving by 10:00 a.m., were relaxed if there higher space availability, there was a lot of extra space in November 2004, and that some people often abandon equipment, especially when it rains, because they believe others may get some benefit from the equipment.[5] T.R.1 at 92-93.

---

[5] Ranger Davis is not a law enforcement ranger. T.R.1 at 90-91.

6

Tucker moved for an acquittal following the close of the government's case in chief, and again argued for an acquittal at closing arguments. T.R.2 at 57, 89.  The Magistrate Judge denied the requests and found Tucker guilty of violating 36 C.F.R. §§ 2.10(b)(2), 2.22(a)(3), and 2.61(a).  Tucker was found not guilty of violating 36 C.F.R. § 2.10(b)(8) on November 12, 2004, because Ranger Davis testified that it was customary for people to register at campsites the next morning, Tucker paid for the campsite on November 13, 2004, and paying for the campsite on November 13, 2004, was within the custom of the Park.[6]  T.R.1 at 92, 98; T.R.2 at 99.

## SUFFICIENCY OF THE EVIDENCE FOR CONVICTION

*Appellant's Argument*

Tucker argues that the evidence is legally insufficient to support his convictions.  Tucker argues that he did not violate § 2.61(a) because he did not reside in the Park.  The evidence showed that he received frequent rides out of and into the Park, as well as to locations surrounding the Park and areas outside the Park area.  Tucker argues that he has no abode or vehicle, but does list the Park as his residence on his driver's license and voter registration and does receive mail at the Park.  However, to vote and have a license, some address is needed and there are other who receive mail at the Park who live in communities that have no post office.  The government proved only that Tucker regularly used the Park.

Tucker argues that he did not violate § 2.22(a)(3), failure to turn in property, because he simply stored his belongings in a tent that had been abandoned in Camp 4 in early November of 2004.  Ranger Davis testified that it is customary for people to abandon tents because they believe someone will benefit from the abandoned gear and that in some instances, that assumption is true.  Tucker was found not guilty of violating § 2.10(b)(8) based on the custom of the Park in November/non-busy times.  He should receive the benefit of the Park's custom with respect to this charge.

---

[6]Later, a sentence of 24 months informal probation, suspended a banishment order during that 24 month period, fined Tucker a total of $30 in statutory assessments, ordered Tucker to only enter Yosemite National Park lawfully, and ordered Tucker to participate in drug trusting, but no custodial sentence was imposed.  See Transcript of February 21, 2006, Sentencing Hearing.

7

Tucker argues that he did not violate § 2.10(b)(2), leaving equipment in a campground after departing, because the conduct in question occurred in November. When the campgrounds are not busy, such as in November, Ranger Davis testified that it is customary to relax the rules of departure. Since Tucker was found not guilty on the basis of custom as to § 2.10(b)(8), he should receive the same benefit regarding this charge.

Accordingly, since the evidence established that Tucker did not reside in the Park and was acting in conformity with the custom of the Park, Tucker argues that his motions for acquittal should have been granted.

*Appellee's Response*

The government responds that the evidence adduced at trial was sufficient to support a guilty finding on each of the offenses at issue. With respect to § 2.61(a), the evidence showed that Tucker resided in the Park from September 2004 through December 2004. The evidence showed: (1) Tucker's cache of belongings was in an area of the Park where camping was prohibited and where Tucker had been observed numerous times by rangers;[7] (2) in DMV documents Tucker listed his mailing address as P.O. Box in the Park and listed his residence as Yosemite Lodge, Yosemite; (3) Tucker voted in the Park and the address where he "lived" was listed as "care of Chongo, city of Yosemite"; (4) from July through November 2004 an employee at the Yosemite Lodge Cafeteria stated that there were only a few occasions when Tucker was not present; (5) Tucker told rangers that he had been in the Park "a while" and that he did not want to stay "another five or six years"; (6) rangers continuously observed Tucker in the Park early in the morning, late at night, and throughout the day. This evidence sufficiently establishes a violation of § 2.61(a).

As to § 2.22(a)(3), on November 12, 2004, Tucker told rangers that he found the tent and had used it to store his own property on November 6, 2004. On November 13, 2004, Tucker told rangers that the tent did not belong to him and that he just started using it. Before the tent was impounded, Tucker claimed ownership of all the items in the tent. Tucker found property, i.e.

---

[7]This cache included sleeping supplies, personal and business effects, clothes, office supplies, computer media, personal and business mail addressed to Tucker, and printed material authored by Tucker.

the tent, had been using it for a week, and had failed to turn it in. The Magistrate Judge was free to reject Ranger Davis's opinion about people thinking that others can benefit from their abandoned gear. Further, Tucker's argument deals only with abandonment during rain, and does not address the "as soon as practicable" aspect of the offense.

As to § 2.10(b)(2), Ranger Hoeflich testified that on November 22, 2004, he observed Tucker ride his bike to Camp 4, campsite #9. Tucker accessed a bear box, then left the campground leaving his bicycle behind. Tucker was not registered to camp at Camp 4. On November 23, Tucker returned to the same bear box and removed an orange foam sleeping pad. This shows that Tucker had left both the foam pad and the bicycle, which violated the regulation.

## LEGAL STANDARD

The denial of a motion for acquittal based on insufficiency of the evidence is reviewed *de novo*. United States v. Rojas-Flores, 384 F.3d 775, 778 (9th Cir. 2004); United States v. Yoshida, 303 F.3d 1145, 1149 (9th Cir. 2002). The standard for reviewing the sufficiency of the evidence to support a criminal conviction is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bucher, 375 F.3d 929, 934 (9th Cir. 2004). This test applies to both jury and bench trials. United States v. Randolph, 93 F.3d 656, 660 (9th Cir. 1996); United States v. Arbo, 691 F.2d 862, 866 (9th Cir. 1982). All reasonable inferences that may be drawn from the evidence are to be drawn in the government's favor. United States v. Heuer, 4 F.3d 723, 731 (9th Cir. 1993); United States v. Reese, 775 F.2d 1066, 1071 (9th Cir. 1985). The reviewing court is required to "respect the exclusive province of the fact-finder to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the fact-finder resolved all such matters in a manner which supports the verdict." United States v. Khatami, 280 F.3d 907, 910 (9th Cir. 2002); United States v. Hubbard, 96 F.3d 1223, 1226 (9th Cir. 1996). In bench trials, "the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts." United States v. Bales, 813 F.2d 1289, 1293

(4th Cir. 1987); see also United States v. Makowski, 120 F.3d 1078, 1081-82 (9th Cir. 1997). "The court may select among conflicting inferences to be drawn from the testimony." Bales, 813 F.2d at 1293; United States v. Jennings, 726 F.2d 189, 190 (5th Cir. 1984); see also Khatami, 280 F.3d at 910.

## DISCUSSION

**1.     Count 1: Residing in the Park (36 C.F.R. § 2.61(a))**

36 C.F.R. § 2.61(a) reads: "Residing in park areas, other than on privately owned lands, except pursuant to the terms and conditions of a permit, lease or contract, is prohibited." There is no definition of "reside" or "residing." Undefined terms are generally given their ordinary or natural meaning. Smith v. United States, 508 U.S. 223, 228-29 (1993); United States v. Daas, 198 F.3d 1167, 1174 (9th Cir. 1999). Merriam Webster defines "reside" as "to dwell permanently or continuously **:** occupy a place as one's legal domicile." See www.merriam-webster.com.   The definition of "reside" in prior editions of Black's Law Dictionary includes "to live, dwell, abide, sojourn, stay, remain and lodge; to settle oneself or a thing in a place; to be stationed; to remain or stay; to dwell permanently or continuously; to have a settled abode for a time; to have one's residence or domicile; specifically, to be in residence . . . ." See Black's Law Dictionary at p. 1308 (6th ed.).[8] In other contexts, courts have approved of Webster's and Black's definitions of "reside." See,e.g., Weems v. Little Rock Police Dept., 453 F.3d 1010, 1016 (8th Cir. 2006); United States v. Namey, 364 F.3d 843, 846-847 (6th Cir. 2004). The Black's definition was read to the Magistrate Judge during the trial. To this Court's knowledge, no other court has cited or interpreted § 2.61(a).   In the absence of authority and argument to the contrary, the Court will interpret "reside," for purposes of § 2.61(a), as meaning "to settle oneself or a thing in a place or to dwell permanently or continuously."

Here, viewing the evidence in the light most favorable to the government and granting all reasonable inferences in the government's favor, the evidence is sufficient to support the conviction for violation of 36 C.F.R. § 2.61(a). The driver's license and voter registration both

---

[8]The current Eighth Edition of Black's Law Dictionary includes definition for "residence," "residency," and "resident," but not for the term "reside."

10

indicated that Tucker himself identified the Park as his residence. The testimony indicates that Tucker was a constant fixture either in Camp 4 or the Lodge Cafeteria throughout the entirety of 2004, including September through December. Tucker also kept with him an excessive amount of possessions, including items that are not associated with camping or outdoor recreational use. Further, Tucker's own words to Park rangers indicated that he resided in the Park and occasionally sold his books in the Park. It is true that Tucker's witnesses established that he received rides into and out of the Park in 2004, but the testimony does not address September through December 2004. The Magistrate Court was free to conclude that the Tucker's witnesses established only that Tucker was occasionally absent from the Park in 2004. The Magistrate Court, as the finder of fact, was free to reject the inferences of Tucker's witnesses and accept the inferences created the government's witnesses. Viewed in the light most favorable to the government, the evidence supports the conclusion that Tucker was residing in the Park, that is, that Tucker had settled himself in the Park or was dwelling continuously in the Park. The Magistrate Court could rationally find beyond a reasonable doubt that § 2.61(a) was violated. Jackson, 443 U.S. at 319; Bucher, 375 F.3d at 934; Heuer, 4 F.3d at 731. The motion for acquittal was properly denied for this offense.

**2.      Count 3: Failure To Turn In Found Property (36 C.F.R. § 2.22(a)(3))**

36 C.F.R. § 2.22(a)(3) reads: "The following are prohibited . . . Failing to turn in found property to the superintendent as soon as practicable." Viewed in the light most favorable to the government and making all inferences in the government's favor, the evidence indicates that the plain language of the regulation was violated.

The testimony indicated that Tucker admitted that he found the red Greatland tent in early November 2004, had used it for a week, and made no effort to inform rangers that he had discovered the tent. Ranger Davis did testify that people often abandon equipment, especially food and especially when it rains. However, that people often abandon equipment or food does not address the duty imposed upon those who find equipment, abandoned or otherwise, to turn the found equipment in as soon as practicable. Moreover, that other campers or climbers may

abandon equipment does not establish the Park's custom regarding enforcement of § 2.22(a)(3). Further, Ranger Davis was not a law enforcement ranger and did not know how many citations had been issued for not turning in found equipment as soon as practicable. T.R.1 at 91, 94. Tucker's own words show that he made no effort to comply with § 2.22(a)(3) at any time, that is, he at no time attempted to turn in the tent (or even at least to inform personnel of its discovery). Instead, Tucker affirmatively used the found tent for a week. The Magistrate Court could rationally find, beyond a reasonable doubt, that Tucker violated § 2.22(a)(3). Jackson, 443 U.S. at 319; Bucher, 375 F.3d at 934; Heuer, 4 F.3d at 731. The motion for acquittal was properly denied for this offense.

### 3. Count 4: Leaving Equipment After Departing Campsite (36 C.F.R. § 2.10(b)(2))

36 C.F.R. § 2.10(b)(2) reads: "The following are prohibited . . . Leaving camping equipment, site alterations, or refuse after departing from the campsite." Viewed in the light most favorable to the government and making all inferences in the government's favor, the evidence indicates that the plain language of the regulation was violated.

The testimony indicates that on November 22, 2004, Tucker accessed the bear box at campsite No. 9 in Camp 4, that he then left campsite No. 9, that he was not registered at Camp 4, and that he returned on November 23, 2004, where he retrieved an orange sleeping pad from campsite No. 9's bear box. There is no dispute that the orange sleeping pad is "camping equipment." Nor is there any dispute that Tucker left the sleeping pad overnight at a campsite at which he neither remained nor was registered. Ranger Davis did indicate that some rules were relaxed in November 2004 due to higher space availability, but he did not mention § 2.10(b)(2) or testify that Tucker behaved in any manner consistent with enforcement customs surrounding § 2.10(b)(2) as applied to the orange sleeping pad. Further, Ranger Davis was not a law enforcement ranger and did not know how many citations had been issued for leaving property in a campsite. T.R.1 at 91, 94. The Magistrate Court could rationally find, beyond a reasonable doubt, that Tucker violated § 2.10(b)(2). Jackson, 443 U.S. at 319; Bucher, 375 F.3d at 934; Heuer, 4 F.3d at 731. The motion for acquittal was properly denied for this offense.

**CONCLUSION**

Tucker challenges the sufficiency of the evidence to support his convictions under 36 C.F.R. §§ 2.10(b)(2), 2.22(a)(3), and 2.61(a). Tucker's arguments rely upon possible inferences created by his own witnesses and discounting the contrary inferences created by the government's witnesses. However, since this was a bench trial, the Magistrate Court was free to choose among conflicting inferences and make credibility determinations, and was therefore free to accept the inferences created by the government's evidence. When the sufficiency of the evidence to support a conviction is challenged, the evidence is viewed in the light most favorable to the conviction and all reasonable inferences are made in favor of the conviction. As discussed above, viewing the evidence in the light most favorable to the prosecution, the Magistrate Court could have rationally found beyond a reasonable doubt that Tucker violated 36 C.F.R. §§ 2.10(b)(2), 2.22(a)(3), and 2.61(a). The Magistrate Court did not err when it denied the requests for acquittal.

Accordingly, Tucker's grounds for review are DENIED and the Magistrate Court is AFFIRMED.

IT IS SO ORDERED.

**Dated:   June 25, 2007**                         /s/ Anthony W. Ishii
                                                  UNITED STATES DISTRICT JUDGE